235 N.J. Super. 547 (1989)
563 A.2d 851
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EUGENE JOHNSON, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1989.
Decided August 16, 1989.
*548 Before Judges MICHELS, LONG and MUIR, Jr.
Carolyn Anita Parks, Assistant Deputy Public Defender and Matthew Astore, Deputy Public Defender II, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Carolyn Anita Parks, of counsel; Matthew Astore and Mark H. Friedman, Assistant Deputy Public Defender, on the brief).
*549 Mildred Vallerini Spiller, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Mildred Vallerini Spiller, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Eugene Johnson, Jr., was convicted of murder in the second degree for the killing of Marie McDonald (McDonald) on or about May 16, 1979, in Camden, New Jersey, in violation of N.J.S.A. 2A:113-1 and -2 (repealed by L. 1978, c. 95, § 2C:98-2, effective September 1, 1979). The trial court committed defendant to the custody of the Commissioner of the Department of Corrections for a term of not less than 28 years, nor more than 30 years. Defendant appeals, seeking a reversal of his conviction or, alternatively, a modification of his sentence on the following grounds set forth in his brief:
I. THE TRIAL COURT'S REFUSAL TO GRANT THE DEFENSE'S REQUEST TO CHARGE AND ITS SUBSEQUENT REFUSAL TO PROVIDE THE JURY WITH AN INSTRUCTION ON THE LAW RELATING TO MANSLAUGHTER DEPRIVED DEFENDANT OF A FAIR TRIAL AND THEREFORE CONSTITUTES REVERSIBLE ERROR.
II. THE TRIAL JUDGE ERRED BY FAILING TO QUESTION DEFENDANT PERSONALLY REGARDING WHETHER OR NOT HE WISHED TO WAIVE THE STATUTE OF LIMITATIONS FOR MANSLAUGHTER. (Not Raised Below.)
III. THE COURT'S FAILURE TO DEFINE THE TERM "MALICE" RESULTED IN AN INADEQUATE DEFINITION OF THE OFFENSE OF MURDER. (Not Raised Below.)
IV. THE ADMISSION INTO EVIDENCE OF AUBREY STEVENS' PRIOR CONSISTENT STATEMENT AND THE FAILURE OF THE COURT TO GIVE ANY LIMITING INSTRUCTION REGARDING THE APPROPRIATE USE OF SUCH A STATEMENT DEPRIVED DEFENDANT OF A FAIR TRIAL.
A. The Admission Into Evidence Of Aubrey Stevens' Prior Consistent Statement Violated New Jersey Evidence Rule 20 And Deprived Defendant Of A Fair Trial.
B. The Failure To Give The Jury Any Limiting Instructions Regarding The Appropriate Use Of The Prior Consistent Statement Was Error.

*550 V. IN THE CASE AT BAR, THE IMPOSITION OF A 28 TO 30 YEAR SENTENCE FOR SECOND DEGREE MURDER WAS MANIFESTLY EXCESSIVE.

I.
Defendant first contends that the trial court erred in refusing to instruct the jury regarding manslaughter as it related to the charge of murder. At the time that defendant was indicted under Title 2A for murder, the five-year statute of limitations under N.J.S.A. 2A:159-2 (repealed by L. 1978, c. 95, § 2C:98-2, effective September 1, 1979) had run for all lesser included offenses of murder, including manslaughter. The trial court was faced with the choice of whether to charge the jury concerning manslaughter, despite that the limitations period had expired, or submit the case to the jury with instructions only on the charge of murder. The trial court, guided by the United States Supreme Court opinion in Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), held that in order to receive the benefit of a charge to the jury on the lesser included offense of manslaughter, defendant first would have to waive his statute of limitations defense.
In Spaziano, the defendant was indicted and tried for capital murder after the statute of limitations had run for all non-capital offenses. At the close of the evidence, the trial court informed the defendant that it would instruct the jury regarding lesser included, non-capital offenses if the defendant would waive the statute of limitations as a defense to those offenses. The defendant declined and the trial court submitted the case to the jury solely on the charge of capital murder, whereupon the defendant was convicted and sentenced to death. The Supreme Court in Spaziano discussed its earlier opinion in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), which "made clear that in a capital trial, a lesser included offense instruction is a necessary element of a constitutionally fair trial." Spaziano, 468 U.S. at 455, 104 S.Ct. at 3159, 82 L.Ed.2d at 349. The Supreme Court stated:

*551 The element the Court in Beck found essential to a fair trial was not simply a lesser included offense instruction in the abstract, but the enhanced rationality and reliability the existence of the instruction introduced into the jury's deliberations. Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. Beck does not require that result.
* * * * * * * *
The goal of the Beck rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence. Id., at 638-643, 65 L Ed2d 392, 100 S Ct 2382. Requiring that the jury be instructed on lesser included offenses for which the defendant may not be convicted, however, would simply introduce another type of distortion into the factfinding process. [468 U.S. at 455-456, 104 S.Ct. at 3159-3160, 82 L.Ed.2d at 349.]
The Supreme Court affirmed the trial court's decision not to charge the jury regarding manslaughter unless the defendant waived his statute of limitations defense:
If the jury is not to be tricked into thinking that there is a range of offenses for which the defendant may be held accountable, then the question is whether Beck requires that a lesser included offense instruction be given, with the defendant being forced to waive the expired statute of limitations on those offenses, or whether the defendant should be given a choice between having the benefit of the lesser included offense instruction or asserting the statute of limitations on the lesser included offenses. We think the better option is that the defendant be given the choice.
[468 U.S. at 456, 104 S.Ct. at 3160, 82 L.Ed.2d at 350.]
See also State v. Sullivan, 541 A.2d 450, 453-455 (R.I. 1988), in which the Rhode Island Supreme Court held that, in a non-capital murder case, the trial court did not err in declining to instruct the jury on manslaughter as a lesser included offense of murder, the crime for which the defendant was indicted, where the statute of limitations had expired for manslaughter; United States v. DeTar, 832 F.2d 1110, 1115 (9th Cir.1987), in which the court addressed whether the defendant was entitled to have the jury instructed on time-barred lesser included offenses of the tax offenses for which he was indicted, where the defendant contended that his request to have the jury instructed on the lesser included offenses did not constitute a waiver of the statute of limitations as an affirmative defense. The Ninth Circuit stated that "[i]f the import of [the defendant's] *552 argument is that the jury should be instructed on a lesser included offense upon which a valid conviction could not be entered, we reject it. We will not permit the jury to be misled in that manner." 832 F.2d at 1115.
We hold, therefore, that since defendant could not be convicted of the lesser included offense of manslaughter because the statute of limitations had run, the trial court did not err in refusing to instruct the jury with respect to that offense in the absence of a waiver by defendant of the statute of limitations. A jury should not be misled into believing that a valid conviction may be entered on a lesser included offense when the statute of limitations bars defendant's prosecution and conviction for that offense.

II.
Defendant also contends, for the first time on appeal, that the trial court erred by not addressing him personally regarding his choice whether to waive the defense of the statute of limitations. Defendant argues that his conviction cannot stand in the absence of a showing that he personally made a knowing and intelligent decision not to waive the statute of limitations. We disagree. There was no impropriety in the procedure utilized here, because there exists no requirement that a trial court address a criminal defendant personally regarding a waiver of the statute of limitations.
In State v. Bogus, 223 N.J. Super. 409, 420-426 (App.Div. 1988), certif. den., 111 N.J. 567 (1988), we held that a trial court had no duty to personally advise an accused represented by counsel of his constitutional right not to testify and the consequences thereof:
Defendant claims that he did not knowingly and intelligently waive his right not to testify because the trial court failed to conduct a voir dire examination or otherwise inform him on the record of his right not to testify and of the consequences which attend the decision to testify. However, on the motion for a new trial, defendant's counsel admitted that in his opening to the jury he stated that defendant would testify and when the State rested its case, he again indicated to the trial court that defendant would testify. Defendant was called *553 to the stand by his counsel and testified without objection. The inference is clear that defendant knowingly, voluntarily and intelligently, with the advice of counsel, waived his right not to testify and took the stand on his own behalf. Defendant's election to testify was a tactical decision and defendant must bear the consequences of it. Under these circumstances there was no duty on the trial court to advise defendant as to his right not to testify or to explain to him the ramifications of his decision to forego that right. [223 N.J. Super. at 423].
Here, similarly to Bogus, defendant was present at several discussions between the trial court and counsel regarding defendant's choice whether to waive the statute of limitations as a defense to manslaughter. The trial court specifically instructed defense counsel that "you should discuss it with your client ... [and] [l]et me know what your client's position is" on that issue. There is no indication in the record that defense counsel did not discuss the matter with defendant or that defendant disagreed with the course of action taken by his attorney. As in Bogus, under these circumstances the inference is that defendant made a conscious decision not to waive the statute of limitations as a defense to manslaughter and, therefore, he must accept the consequences of that decision. Finally, the reasoning in Bogus, which was in reference to the constitutional right to refuse to testify against oneself, is even more persuasive here, where the issue involves not a constitutional right but a statutory defense. See State v. Zarinsky, 75 N.J. 101, 106 (1977). Consequently, there is no error, let alone plain error, in the failure of the trial court to personally address defendant with respect to defendant's decision whether to waive the statute of limitations as a defense to manslaughter.

III.
Contrary to defendant's claim, the trial court did not err in ruling as admissible under Evid.R. 20 a prior consistent statement by Aubrey Stevens (Stevens). On direct examination, Stevens testified that on the night of the victim's death, the victim had refused to leave a bar with defendant, who thereupon became angry and slapped the victim's drink off the bar. Defendant then hit the victim, causing her to fall to the *554 ground, at which time defendant dragged the victim out of the bar. Stevens also testified that later that evening, while on his way to a party that the victim's daughter was having, he heard the victim in defendant's house, pleading with defendant to stop hitting her. Stevens subsequently encountered defendant and defendant's brother, Vincent, who were arguing with one another as they exited defendant's house. Stevens heard Vincent tell defendant that he "didn't have to beat her up like that," to which defendant responded that "it wasn't none of [Vincent's] business." Later in the evening, Stevens again encountered defendant and Vincent, who were carrying a rug with what appeared to Stevens to be a body rolled up inside of it.
Stevens' direct examination was interrupted by a Rule 8 hearing to determine whether his recollection as to certain events was refreshed for the purpose of determining the admissibility under Evid.R. 63(1) of a prior statement he had given to the police. During the hearing, the trial court held that prior consistent statements by Stevens would not be admissible unless Stevens' testimony was shaken on cross-examination by an attack or charge, expressed or implied, of recent fabrication. The trial court indicated that, under such circumstances, a limiting instruction would be given to the effect that such statements could be used only to support credibility.[1]
*555 Thereafter, Stevens concluded his direct testimony. On cross-examination, however, defense counsel highlighted several inconsistencies in details between the prior statement and Stevens' trial testimony, thus creating the inference that Stevens had not been truthful at trial. The trial court, therefore, permitted the State to introduce large portions of the transcript of the prior statement by Stevens to clarify any questions in the jury's mind regarding the similarity between the two statements.
It is fundamental that a prior consistent statement may be admitted in evidence under Evid.R. 20 to support the credibility of a witness in order to rebut an expressed or implied charge against him of recent fabrication. State v. Sinclair, 49 N.J. 525, 546-547 (1967). In State v. King, 115 N.J. Super. 140, 146-147 (App.Div. 1971), certif. den., 59 N.J. 268 (1971), we stated in a similar context:
A "charge" of recent fabrication can be effected through implication by the cross-examiner as well as by direct accusation of the witness. In fact that is the usual way in which the charge is made. See State v. Kane, supra (9 N.J. Super. [254], at 263-265). Defendant argues that the cross-examination did not bring out any recent fabrication by Miss Peters but only suggested that her testimonial version of the affair was a lie from the time of the very first statement of the witness to the police and that it was contrived by her to protect Jackson. We think the trend of the cross-examinations, especially toward their conclusion, went considerably beyond that. The allusion to the threat by the witness to the detectives a week before trial that she intended to lie at the trial, coupled closely with the outright assertion of the examiner that she was in fact lying in implicating King, could fairly have been held by the trial judge to have conveyed the impression to the jury that the witness had recently decided to lie to involve King. For present purposes, it is the impression the cross-examiner makes upon the jury in the heat of the trial *556 rather than what an appellate court would discern from a coldly analytical study of the testimony which must control review of the somewhat discretionary exercise of judgment made by the trial judge in the matter.
See also State v. Bass, 221 N.J. Super. 466, 486 (App.Div. 1987), certif. den., 110 N.J. 186 (1988).
Here, Stevens' credibility was challenged by an implied charge of recent fabrication and, therefore, the trial court properly admitted Stevens' statement under Evid.R. 20. Additionally, where, as here, defense counsel has cross-examined a witness regarding inconsistencies between the trial testimony of the witness and his prior statement, the admission of the prior statement was entirely proper to clarify the inconsistencies pointed out through cross-examination. See United States v. Pierre, 781 F.2d 329, 333 (2d Cir.1986).
Finally, contrary to defendant's argument, there is no requirement under Evid.R. 20 that a party seeking admission of a prior consistent statement show that the prior statement was made before any alleged motive to falsify existed on the part of the declarant. Cf. United States v. Harris, 761 F.2d 394, 399-400 (7th Cir.1985); United States v. Rubin, 609 F.2d 51, 66-70 (2nd Cir.1979) (Friendly, J., concurring), aff'd on other grounds, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). But cf. United States v. Quinto, 582 F.2d 224, 233-234 (2nd Cir.1978). Consequently, the trial court did not err in admitting Stevens' prior statement to clarify any questions in the jury's mind regarding the similarity between his trial testimony and the statement.
Beyond this, even if the prior statement was not properly admissible into evidence, its admission did not constitute prejudicial error. The circumstantial evidence of guilt was so strong that the statement was not necessary to establish defendant's guilt, nor was there any real possibility that the "error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). See also State v. *557 Bankston, 63 N.J. 263, 273 (1973); State v. Melvin, 65 N.J. 1, 18-19 (1974). Stated simply, any such error was harmless.

IV.
Finally, we have considered the remaining contentions and all the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2).
Accordingly, the judgment under review is affirmed.
NOTES
[1] A dispute arose following argument of this appeal concerning whether the trial court gave the jury a limiting instruction regarding Stevens' prior statement. The transcript of the trial court's final jury instruction does not contain any reference to such a charge. The trial court, however, advised this court and appellate counsel that such an instruction had been included in the final jury charge. A copy of the draft of the entire charge, including handwritten limiting instructions dealing with Stevens' prior statement, was forwarded to this court. Our study of the transcript of February 14, 1986, revealed that a substantial portion of the trial court's charge was missing. In fact, the charge as reproduced in the transcript did not make sense. We concluded that the missing portion, including the limiting instruction concerning Stevens' statement, plainly resulted from an error in the transcription. Nonetheless, we remanded the matter to the trial court for the limited purpose of reconstructing the record of the jury charge. See R. 2:5-5(a). See also State v. Kuske, 109 N.J. Super. 575, 592-593 (App.Div. 1970); State v. Smith, 84 N.J. Super. 452, 456 (App.Div. 1964), certif. den., 43 N.J. 270 (1964). On remand, the full and accurate record of the jury charge was transcribed for the first time and was found to contain the limiting instruction dealing with Stevens' prior statement. In light of this, defendant has withdrawn his contention raised under Point IVB, supra, that the trial court failed to give a limiting instruction regarding the proper use of the statement. In addition, defendant now concedes that, contrary to his contention raised under Point III, supra, the trial court adequately defined the term "malice" in its charge to the jury on the definition of murder.