**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3515-15T1

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

   v.

J.S.[1],

       Defendant-Appellant.

_____

       Submitted May 1, 2018 — Decided July 19, 2018

       Before Judges Sumners and Natali.

       On appeal from Superior Court of New Jersey,
       Law Division, Camden County, Indictment Nos.
       14-08-2330, 10-09-2485 and 11-03-0677.

       Joseph E. Krakora, Public Defender, attorney
       for appellant (Brian P. Keenan, Assistant
       Deputy Public Defender, of counsel and on the
       brief).

       Mary Eva Colalillo, Camden County Prosecutor,
       attorney for respondent (Jason Magid,
       Assistant Prosecutor, of counsel and on the
       brief).

PER CURIAM

_____

[1]  We use fictitious names for the defendant, the victim and a
witness to protect the victim's privacy interests.

Defendant appeals from his conviction by a jury of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(4) (count two), third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7) (lesser included offense of count five), third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count six), third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count seven), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count eight), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count nine). We affirm.

At the sentencing hearing, the trial court considered aggravating factors one, two, three, six, and nine and found no mitigating factors. The trial court granted the State's motion to sentence defendant to an extended term of imprisonment as a persistent offender pursuant to N.J.S.A. 2C:44-3(a).

Regarding count two, defendant was sentenced to a thirty-five year prison term with eighty-five percent of the sentence to be served without parole eligibility in addition to a five year period of parole supervision upon release and Megan's Law registration requirements and parole supervision for life. Under counts five, six, and eight, defendant was sentenced to five-year concurrent prison terms. The trial court merged count seven with count two, and count nine with count eight. Counts one, three, and four were

dismissed. Additionally, having found defendant guilty of violating his probation under counts one and two, the trial court sentenced defendant to four years imprisonment for each count, with sentences to run concurrently.

Defendant raises the following points on appeal:

POINT I

THE TRIAL JUDGE ERRED IN ADMITTING HEARSAY STATEMENTS [SALLY] ALLEGEDLY MADE TO CATHY AND THE EXAMINING NURSE AS PRIOR CONSISTENT STATEMENTS.

POINT II

THE PROSECUTOR'S BASELESS ARGUMENT IN SUMMATION THAT THE PRESENCE OF TOUCH DNA MATCHING [DEFENDANT] IN [SALLY'S] UNDERWEAR SUPPORTED HER ALLEGATION OF SEXUAL ASSAULT CONSTITUTED PROSECUTORIAL MISCONDUCT THAT DEPRIVED [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL.

POINT III

THE MOTION JUDGE ERRED IN DENYING [DEFENDANT'S] MOTION TO DISMISS COUNTS EIGHT AND NINE OF THE INDICTMENT FOR LACK OF SPECIFICITY AS TO THE WEAPON PURPORTEDLY USED, RESULTING IN A JURY CHARGE AND VERDICT SHEET THAT FAILED TO ENSURE UNANIMOUS FINDINGS ON THE WEAPONS CHARGES.

POINT IV

THE TRIAL JUDGE ERRED IN FINDING AGGREGATING FACTORS ONE AND TWO, FAILING TO FIND MITIGATING FACTOR ELEVEN, AND IN DETERMINING THE AUTHORIZED SENTENCING RANGE FOR THE AGGRAVATED SEXUAL ASSAULT CONVICTION,

RESULTING IN A MANIFESTLY EXCESSIVE AGGREGATE
THIRTY-FIVE-YEAR [sic] SENTENCE.

After a thorough review of the record, we affirm defendant's convictions and the sentence imposed by the trial court.

I.

Defendant was convicted of a violent physical and sexual assault against Sally, with whom he lived and shared a long term romantic relationship. Sally testified that their relationship "turned sour" and that they had not been intimate for two months prior to the underlying incident. One night, while at home with their two young sleeping children, defendant assaulted and raped her.

Before the assault, and while on the phone with her friend Cathy making plans to play an online video game later that night, Sally overheard defendant state, "he was going to rape [her], and tonight was going to be the night." Sally told Cathy what defendant said and asked her to keep her phone by her side as she would call her back once she put the children to bed.

After the children were asleep, Sally went downstairs to the kitchen to get a bite to eat when defendant approached her in an effort to tape her mouth shut. Although unsuccessful, he pushed Sally into the basement where she saw a futon, blankets, a two by four, a hammer, two knives, bleach, bags, a phone cord, an electric

shock system, and a chainsaw. Defendant threatened Sally and raped her while brandishing a knife. Defendant specifically held a knife to Sally's face threatening to kill her, the children, and himself if she screamed. Sally thwarted defendant's attempts to stab her resulting in defendant puncturing the futon.

The assault in the basement terminated when Cathy came to the home and started banging on the front door. Defendant, while still holding a knife, prevented Sally from answering the door and told her not to scream. He then brought her to an upstairs bathroom and, now threatening her with a hammer that Sally stated he brought from the basement, attempted to rape her for a second time and stopped only when Sally reminded him that their children were sleeping directly across the hall.

Defendant then directed Sally to get dressed, answer the door and tell Cathy that everything was fine. Sally opened the door and put one finger up to her mouth to advise Cathy to be quiet, told Cathy what happened and specifically stated that defendant "tried to kill me." Sally was shaking, panicked and crying and had visible injuries to her face and neck.

Cathy, after checking the house phone and noticing that the phone line was cut, called 911 using Sally's cell phone. Cathy stayed with Sally until the police arrived approximately ten minutes later. Upon entering the home and speaking with Sally out

of defendant's presence, Sally "kept throwing signs to" her and "talking with her hands." Further, Cathy stated she told the 911 operator that Sally "was going through it with her kids' father" and that "he put his hands on her" and that Sally was scared and wanted defendant out of her home. Cathy also testified that when she first arrived at the home she peered through the mailbox slot and observed defendant carrying a hammer with a wooden handle.[2]

After the police arrived, Sally was taken to the hospital and met with a sexual assault nurse examiner (nurse) who performed a sexual abuse evaluation. At trial, the nurse testified she took swab samples from Sally's mouth, vagina, exterior parts of the genitalia, and close to her anal area. She also photographed Sally and found abrasions, bruises, and marks on her backside. Over objection from defendant, the nurse testified that the "first thing" Sally said to her was that defendant tried to kill her.

At trial, the State also called a State Police forensic scientist who was qualified as an expert in DNA analysis. He testified to performing two tests on samples from Sally's underwear. The first test excluded defendant from the sperm fraction found, while the second test demonstrated that defendant matched the epithelial (skin) fraction found in the underwear.

---

[2] The hammer introduced into evidence at trial had a rubber handle.

A-3515-15T1

With respect to the sperm fraction, the results demonstrated a mixture of DNA profiles from multiple people and defendant "was excluded as a possible contributor."

After defendant's indictment, Sally recanted her allegations numerous times including two signed and notarized letters she sent to the prosecutor and judge. She also visited the prosecutor's office, claimed that defendant didn't do anything and requested the charges be dropped. She also continued to communicate with defendant during his incarceration and told defendant's niece, "she didn't mean to lie" and "this was all a falsehood."

The letters were signed by Sally but written by defendant from Sally's perspective. One of the letters read to the jury stated:

> I falsely gave the police a statement that wasn't true in an incident that didn't occur at all. It was a setup to get [defendant] incarcerated and removed from [the] home. . . . I am very sorry I lied . . . on the police report to get him arrested and falsely charged. I write the [affidavit] to say [defendant] did not harm me at all, or any kind of way.

Further, Sally withdrew a restraining order against defendant stating she was not fearful of him.

At trial, Sally retracted her recantations and maintained that her original statements were true and that defendant violently and repeatedly assaulted and raped her.

A-3515-15T1

A jury trial took place over the course of seven days. The State called seven witnesses, including Sally, Cathy, the nurse, and the DNA expert. Defendant called as witnesses his niece, who was a friend of Sally's, and his daughter. His niece testified that any rips or tears in the futon existed prior to the assault and that defendant was using a hammer in the upstairs bathroom to put up fixtures the night of the assault.

## II.

In defendant's first point, he argues that it was reversible error for the trial court to admit Sally's out of court statements to Cathy and the nurse pursuant to N.J.R.E. 803(a)(2). We disagree. The statements were consistent with Sally's trial testimony and introduced to rebut an express charge of recent fabrication and improper motive.[3]

---

[3] Defendant also asserts the trial court committed reversible error in admitting Cathy's statements to the 911 operator as an excited utterance pursuant to N.J.R.E. 803(c)(2). Sally's statements to Cathy were made immediately after the sexual assault and Cathy's call to 911 was made shortly after observing her friend's physical condition and the severed phone line. Because we have deemed Cathy's statements admissible pursuant to N.J.R.E. 803(a)(2), we need not independently determine if Cathy had the requisite state of mind for her statements to qualify as excited utterances. See N.J.R.E. 805; see also State v. Hendricks, 759 S.E.2d 434, 437-39 (S.C. Ct. App. 2014) (analyzing "two levels of hearsay" in a 911 recording where the victim made an excited utterance to her mother and the mother repeated the victim's statement, in addition to other statements aimed at incriminating the defendant, to the 911 operator).

"[I]n reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." State v. Kuropchak, 221 N.J. 368, 385 (2015) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). Under that standard, substantial latitude is afforded to a trial court in deciding whether to admit evidence, and "an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling "was so wide of the mark that a manifest denial of justice resulted."'" Id. at 385-86 (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Defendant challenges the introduction of Cathy's statement on the 911 call that defendant "put his hands on [Sally]" and the nurse's statements at trial that during her examination, Sally told her "he tried to kill me" and her conversation with Sally surrounding what Sally saw in the basement and details of the assault. Defendant argues that N.J.R.E. 803(a)(2) is inapplicable because he "never implicitly or explicitly implied that Sally's allegations were a recent fabrication." Rather, it was defendant's position that "[Sally] fabricated her story at the outset of this matter, recanted and then readopted her original fabrication."

N.J.R.E. 803(a)(2) provides,

> A statement previously made by a person who is a witness at trial or hearing [is not excluded by the hearsay rule], provided it

 A-3515-15T1

would have been admissible if made by the declarant while testifying and the statement . . . is consistent with the witness' testimony and is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive. . . .

"A 'charge' of recent fabrication can be effected through implication by the cross-examiner as well as by direct accusation of the witness. In fact that is the usual way in which the charge is made." State v. Johnson, 235 N.J. Super. 547, 555 (App. Div. 1989) (quoting State v. King, 115 N.J. Super. 140, 146-47 (App. Div. 1971)). It is "the impression the cross-examiner makes upon the jury in the heat of the trial rather than what an appellate court would discern from a coldly analytical study of the testimony which must control review of the somewhat discretionary exercise of judgment made by the trial judge in the matter." State v. Moorer, 448 N.J. Super. 94, 109 (App. Div. 2016) (quoting Johnson, 235 N.J. Super. at 555-56).

Defendant asserts that the court's ruling was erroneous because without a legitimate recent fabrication basis, the admitted hearsay statements improperly bolstered Sally's testimony. Although "[a]n attack on a party's credibility through prior inconsistent statements does not necessarily give [the party] the right to use a prior consistent statement to buttress the party's credibility," Palmisano v. Pear, 306 N.J. Super. 395,

403 (App. Div. 1997), here, defense counsel attacked Sally's credibility in his opening statement and sought to impeach her trial testimony with her recantation statements to imply that her recantations were accurate and that she recently fabricated a different version of events when testifying at trial. See Johnson, 235 N.J. Super. at 555 (admitting a witness's prior statement after "defense counsel highlighted several inconsistencies in details between the prior statement and [the witness's] trial testimony, thus creating the inference that [he] had not been truthful at trial"). Also, on cross-examination, defense counsel implied that Sally recently fabricated her trial testimony as he questioned Sally about how she left her cell phone upstairs the night of the assault even though she heard defendant say he was going to rape her and highlighted the recantation letters, emphasizing that Sally understood their contents, was not forced to sign them, and presented them to a notary. Such fabrication during trial or in preparation for trial is certainly "recent" in common parlance. See King, 115 N.J. Super. at 146-47 (admitting a witness's statement to police and grand jury testimony where defense counsel alluded to the witness's threat a week before trial that she would lie at trial).

Moreover, Sally's prior consistent statement to Cathy and the nurse occurred prior to trial. "Where the prior consistent

statement was made before the motive to fabricate arose, the fabrication is 'recent' enough under N.J.R.E. 803(a)(2)." Moorer, 448 N.J. Super. at 110. "The scope of the exception encompasses prior consistent statements made by the witness before the alleged 'improper influence or motive' to demonstrate that the witness did not change his or her story." Neno v. Clinton, 167 N.J. 573, 580 (2001). Thus, "fabrication is 'recent' if it post-dates a prior consistent statement." Moorer, 448 N.J. Super. at 110. A prior consistent statement may have clear probative value:

> Impeachment by charging that the testimony is a recent fabrication or results from an improper influence or motive is, as a general matter, capable of direct and forceful refutation through introduction of out-of-court consistent statements that predate the alleged fabrication, influence, or motive. A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive.
>
> [Id. at 111 (quoting Tome v. United States, 513 U.S. 150, 158 (1995)).]

Accordingly, it was not an abuse of discretion to admit Sally's consistent statement to Cathy and the nurse to refute the allegation of recent fabrication.

Second, both witnesses' statements are admissible under the alternative basis provided in the Rule to rebut the defendant's claims that Sally had a motive to lie. That defense counsel

12

challenged her motive for testifying is beyond dispute. Counsel elicited during cross-examination that Sally was upset that he was inappropriately speaking to other women, a fact she confirmed by looking at his Facebook account. During his closing, counsel stated: "[W]hat's her motive? The motive is clear as day. Get him out of the house."[4]

### III.

In defendant's second point he contends for the first time on appeal that the prosecutor committed misconduct during closing arguments warranting reversal when he commented on the admitted DNA evidence. Because there was no objection to the prosecutor's statements, we review the issue for plain error. R. 2:10-2. In other words, the alleged misconduct must have been clearly capable of producing an unjust result. State v. Black, 380 N.J. Super. 581, 592 (App. Div. 2005). We conclude that the prosecutor's comments were fair argument based on the DNA evidence properly

---

[4] Moreover, the Supreme Court has declined to adopt as a rigid admissibility requirement that previous consistent statements must be made prior to the motive or influence to lie. State v. Chew, 150 N.J. 30, 81 (1997). Where "many things were happening as the different stories unfolded" and "[t]here were shades of difference between the witnesses' motivations at different times," the Court upheld the admission of consistent statements made after some motive to fabricate arose, but before other motives to fabricate arose. Id. at 80.

admitted at trial and do not warrant reversal of defendant's convictions.

Defendant objects to the following comments made during the prosecution's summation:

> We do have the DNA in this case, and yes it was not — it excluded the defendant as a possible contributor to the semen found. He was only inside of her five or six times, for a couple of seconds, only because [Cathy] interrupted him. That's why there's no semen in the defendant. But what is there? Found in the underwear sample taken from [Sally's] underwear are his skin cells. That part was glossed over. DNA matching his profile for his skin cells was found in her underwear that she was wearing that night, even though they hadn't been intimate in months.

The prosecutor continued by stating, "[a]ll of the evidence from [Cathy], from the police, from the DNA, and doctors matched only one conclusion that what [Sally] told you on the stand was exactly what happened."

Prosecutors are afforded wide latitude during summations. State v. R.B., 183 N.J. 308, 330 (2005). Yet, they must "confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." State v. Smith, 167 N.J. 158, 178 (2001). When considering claims of prosecutorial misconduct, we must evaluate "whether a prosecutor committed misconduct . . . [and, if so,] whether the prosecutor's misconduct

14 <span>A-3515-15T1</span>

constitutes grounds for a new trial."  Id. at 181.  Therefore, where a prosecutor's comments may constitute misconduct, reversal of a defendant's conviction is not justified unless the comments were "so egregious that [they] deprived the defendant of a fair trial."  State v. McGuire, 419 N.J. Super. 88, 139 (App. Div. 2011) (quoting State v. Ramseur, 106 N.J. 123, 322 (1987)).

In support of his misconduct claim, defendant relies on numerous articles and expert testimony in other cases that allegedly "prove that the presence of skin cells matching defendant's DNA in Sally's underwear is virtually meaningless because those cells would be ubiquitous in his home."[5]  Second, defendant contends that any comment that epithelial DNA evidence supported the State's claim that defendant sexually assaulted Sally was unfounded and highly prejudicial because it was unsupported by expert testimony to support that precise proposition.

The prosecutor's comments were fair argument based on the evidence admitted at trial.  Defendant's arguments clearly address

---

[5]  Defendant relies on a series of law review articles and expert opinions not presented to the trial court.  There are at least two problems with that "evidence."  First, the material was not presented to the trial court for consideration and, thus, it is inappropriate for consideration on appeal.  See Zaman v. Felton, 219 N.J. 199, 226-27 (2014).  Second, both trial and appellate courts cannot "fill in missing information on their own."  N.J. Div. of Child Prot. & Permanency v. A.L., 213 N.J. 1, 28 (2013).

the weight of the evidence, not its admissibility. Even if we were to accept the proposition that there was an abundance of defendant's epithelial DNA in the home, fair comment on that evidence was proper if for no other reason than defendant's skin cells were found inside Sally's underwear despite the position taken at trial that he did not sexually assault Sally and that defendant and Sally had not been intimate in months.

Additionally, the prosecutor's comments were a fair response to statements made during defense counsel's closing. See State v. Smith, 212 N.J. 365, 403-04 (2012) (stating that, in determining if a prosecutor engaged in misconduct, "an appellate court will consider whether the offending remarks were prompted by comments in the summation of defense counsel"). Ultimately, "it was for the jury to decide whether to draw the inferences the prosecutor urged." R.B., 183 N.J. at 330 (quoting State v. Carter, 91 N.J. 86, 125 (1982)).

In his summation, defense counsel repeatedly challenged Sally's credibility by emphasizing the lack of physical evidence corroborating her claim that defendant digitally penetrated her vagina. He stated, the "State doesn't present to you demonstrative evidence, firm evidence, clear evidence. They only wish you to rely on a statement of a former girlfriend of [defendant]" and that "any demonstrative evidence referenced to penetration or

16

referenced to semen or referenced to anything that alleges a sexual contact . . . [is] a falsehood."  In light of those comments, and the relevance and non-prejudicial nature of the evidence as it related to the sexual assault, we conclude that none of the prosecutor's remarks were "so egregious that [they] deprived the defendant of a fair trial."  McGuire, 419 N.J. Super. at 139.

IV.

In point three, defendant argues that the trial court's denial of his motion to dismiss counts eight and nine for lack of specificity as to the weapon purportedly used resulted in a fatally flawed jury charge and verdict sheet that improperly used the phrase "and/or," which allowed the jury to reach a non-unanimous verdict.

The "decision whether to dismiss an indictment lies within the discretion of the trial court and that exercise of discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused."  State v. Hogan, 144 N.J. 216, 229 (1996) (internal citation omitted).  "An indictment should not be dismissed unless it is manifestly deficient or palpably defective."  State v. Wein, 80 N.J. 491, 501 (1979).

In evaluating the sufficiency of an indictment, the "fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged.  The

key is intelligibility." Id. at 497. The indictment must "charge the defendant with the commission of a crime in reasonably understandable language setting forth all of the critical facts and each of the essential elements which constitute the offense alleged." State v. Franklin, 184 N.J. 516, 534 (2005) (quoting Wein, 80 N.J. at 497). The "clarity of expression" in a criminal indictment is an "indispensable safeguard for the criminally accused." Wein, 80 N.J. at 497.

We agree with the trial court that the indictment was not deficient. Defendant knew precisely from that charging document the factual predicate and legal basis supporting each count. The language used was reasonably understandable. Defendant was aware that the State maintained he committed a sexual and physical assault using both a knife and hammer together or separately.

Although defendant did seek to dismiss counts eight and nine, he never objected to the use of the phrase "and/or" in the jury charge or the verdict sheet or asked for a specific unanimity charge, accordingly, we review this issue for plain error. R. 2:10-2. While we conclude the preferred course would have been for the trial court to separate the knife and hammer in the instructions and verdict sheet, see State v. Gonzalez, 444 N.J. Super. 62 (App. Div. 2016), we find no plain error under the unique factual circumstances here because the jury made a specific finding

18                                                          A-3515-15T1

in count six that defendant "purposely or knowingly cause[d] bodily injury to [Sally] with a deadly weapon, specifically, a knife."

"[A]ppropriate and proper charges to a jury are essential for a fair trial." State v. Collier, 90 N.J. 117, 122 (1982) (quoting State v. Green, 86 N.J. 281, 287 (1981)). A defendant is entitled "an adequate instruction of the law." State v. Pleasant, 313 N.J. Super. 325, 333 (App. Div. 1998).

To preserve an objection to a jury charge on appeal, a defendant must object to the charge at trial. State v. Noble, 398 N.J. Super. 574, 593 (App. Div. 2008). "When counsel conceives that a portion of the [jury] charge as given is inadequate or inconclusive . . . it becomes his duty to alert the court in clear language to the claimed inadequacy or error, stating his grounds therefore." Nesta v. Meyer, 100 N.J. Super. 434, 444 (App. Div. 1968).

Where a "defendant did not object to the jury instructions at trial, we must apply the plain error standard." State v. Burns, 192 N.J. 312, 341 (2007). See also R. 2:10-2. In the context of a jury charge, plain error demands demonstration of "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust

result." Burns, 192 N.J. at 341 (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

An "error in a jury instruction that is 'crucial to the jury's deliberations on the guilt of a criminal defendant' is a 'poor candidate[] for rehabilitation' under the plain error theory." Ibid. (quoting Jordan, 147 N.J. at 422). Nevertheless, any such error is to be considered "in light of 'the totality of the entire charge, not in isolation.'" Ibid. (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Moreover, "any alleged error also must be evaluated in light 'of the overall strength of the State's case.'" Ibid. (quoting Chapland, 187 N.J. at 289).

As to count eight, the trial court instructed that the "first element that the State must prove beyond a reasonable doubt is that there was a weapon." The trial court added that, while a "knife or a hammer is not normally considered a weapon[,] [i]f, however, the State establishes beyond a reasonable doubt that the object is capable of being used to inflict serious bodily injury or death, it may be considered a weapon." The trial court also instructed that the State must prove that "the defendant possessed the weapon alleged." In other words, the State must prove that the defendant had a "knowing intentional control of that item accompanied by a knowledge of its character." The verdict sheet explained that count eight charged that defendant had "in his

possession a weapon, specifically, a <u>knife and/or hammer</u>, with the purpose to use it unlawfully against the person of another." (emphasis added).

With respect to count nine, the trial court instructed the jury that the State must prove beyond a reasonable doubt "[t]hat there was a weapon, that . . . defendant possessed the weapon knowingly, and that . . . defendant's possession of the weapon was under circumstances not manifestly appropriate for a lawful use." The trial court elaborated that a defendant "must know or be aware that he possesses the item, here a <u>knife and/or hammer</u>, and he must know what it is that he possesses or controls. In other words, that it is a <u>knife and/or a hammer</u>. This possession cannot merely be a passing control that is fleeting. . . ." (emphasis added). On the verdict sheet, count nine is described as charging the defendant with "knowingly hav[ing] in his possession a weapon, specifically, a <u>knife and/or hammer</u>, under circumstances not manifestly appropriate for such lawful uses it may have." (emphasis added).

We conclude that this case represents the rare example where the use of the phrase "and/or" did not result in an unjust verdict for the simple reason that the jury convicted defendant on count six of possessing a knife in connection with the sexual assault. Consequently, he therefore also possessed that knife with the

A-3515-15T1

purpose to use it unlawfully against Sally in violation of N.J.S.A. 2C:39-4(d) (count eight), and had in his possession the knife under circumstances not manifestly appropriate for its lawful use in violation of N.J.S.A. 2C:39-5(d) (count nine).

We are mindful that a jury must reach a unanimous verdict in a criminal case, and here the trial court so instructed the jury. N.J. Const. art. I, ¶ 9; R. 1:8-9. "The notion of unanimity requires 'jurors to be in substantial agreement as to just what a defendant did' before determining his or her guilt or innocence." State v. Frisby, 174 N.J. 583, 596 (2002) (quoting United States v. Gipson, 553 F.2d 453, 457 (5th Cir. 1997)). Ordinarily, "a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict." State v. Parker, 124 N.J. 628, 641 (1991). "There may be circumstances in which it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct acts." Ibid.

Unanimity concerns exist even though N.J.S.A. 2C:39-4(d) and N.J.S.A. 2C:39-5(d) proscribe possession of "any weapon" (except a firearm) if used for the stated improper purposes. Here, defendant claims that the jury charge and verdict sheets could

have permitted a less than unanimous group of jurors to convict defendant for possessing a hammer during the second stage of the assault for an improper purpose while a separate group of jurors convicted him based on the use of a knife. To resolve the issue, we return again to the jury's finding on count six. There is but one, and only one, conclusion to draw from that verdict — that the jurors unanimously believed defendant possessed a knife for an improper purpose. That verdict is sufficient to clarify any ambiguity related to the jury's conviction on counts eight and nine.

V.

Finally, we disagree with defendant's claim that his sentence was excessive and conclude that the trial court did not abuse its discretion in finding defendant extended term eligible and in evaluating the aggravating and mitigating factors.

Our review of sentencing determinations is limited and is governed by the "clear abuse of discretion" standard. State v. Roth, 95 N.J. 334, 363 (1984). We are bound to uphold the trial court's sentence, even if we would have reached a different result, unless "(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found . . . were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts . . . makes the sentence

A-3515-15T1

clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting Roth, 95 N.J. at 364-65). See also State v. O'Donnell, 117 N.J. 210, 215-16 (1989).

Aggravating factor one requires the judge to consider "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1). Aggravating factor two requires the judge to assess:

> [t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.
>
> [N.J.S.A. 2C:44-1(a)(2).]

Defendant contends the sentencing court erred in finding aggravating factors one and two because the trial court impermissibly double-counted. We prohibit the use of "evidence both for sentencing purpose and to establish an element of an offense." State v. Kromphold, 162 N.J. 345, 353 (2000). In other words, "sentencing courts must avoid double-counting any element of an offense as an aggravating factor." State v. Lawless, 214 N.J. 594, 601 (2013). See also Fuentes, 217 N.J. at 75. Double-

24                                                   A-3515-15T1

counting is prohibited based upon the fact that, under the criminal code, the Legislature has "already considered the elements of an offense in the gradation of a crime." Kromphold, 162 N.J. at 353. If we were to permit double-counting, "every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances." Ibid.

The trial court's detailed oral decision expressly acknowledged the proscription against double-counting and stated that to the extent any of the facts relied on for sentencing "support the elements of the offenses of which the defendant has been convicted [he was] considering them only to the extent that they exceed what is necessary to prove each element." Beyond the use of the knife, the trial judge found that defendant committed acts beyond those necessary to support the assault convictions and also noted that defendant threatened Sally and that the children were in the home during the incident. He concluded the "circumstances rendered the victim particularly vulnerable and less capable of resistance because she had to consider the well-being of her children during the episode." Based on these findings, which are amply supported by the record, we conclude

that the trial court did not double-count and properly evaluated aggravating factors one and two.

Further, the record supports the inapplicability of mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11), because defendant's children would not suffer <u>excessive</u> hardship due to his incarceration. In fact, the record belies defendant's claim, as his child support arrears were close to $75,000 at the time of sentencing.

We similarly discern no abuse of the trial court's discretion in determining that defendant was extended term eligible. The trial judge reviewed the submissions of counsel and defendant's presentence report that identified the prior convictions that qualified him as a persistent offender. <u>See</u> N.J.S.A. 2C:44-3(a); N.J.S.A. 2C:43-7(a); <u>State v. Case</u>, 220 N.J. 49, 65-66 (2014).

Defendant's final challenge to his sentence is based on the trial court's reference to N.J.S.A. 2C:43-7(a)(1). When discussing the appropriate extended term range, the trial judge stated, "[f]or first degree aggravated sexual assault under 2C:43-7(a)(1) the extended term range is 30 years to life. So, the defendant is exposed to a term of incarceration from 10 years to life." As the State concedes, the citation to N.J.S.A. 2C:43-7(a)(1) was in error as that provision provides a thirty year to life extended term for aggravated sexual assault committed upon a

victim sixteen years old or younger, a circumstance not presented here as Sally was over sixteen years old. The correct statutory provision was N.J.S.A. 2C:43-7(a)(2) which provides for an extended term of twenty years to life for defendant's conviction on count two. According to defendant, "this error surely influenced" the sentence imposed by trial court. We disagree because as defendant acknowledges the applicable sentencing range is the bottom of the ordinary term to the top of the extended term. State v. Pierce, 188 N.J. 155, 171 (2006). Here, the trial judge correctly stated the sentencing range — ten years to life. Further, the trial judge's detailed findings, where he evaluated and weighed the aggravating and mitigating factors, belie defendant's unsupported speculation regarding any improper influence on his sentencing decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3515-15T1